IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JAMIE MCKNIGHT,** : | | |
| *Plaintiff* : | CIVIL ACTION | |
| : | | |
| v. : | | |
| : | | |
| **AMAZON.COM INC.** *et al.* : | No. 23-1449 | |
| *Defendants* : | | |
| : | | |

**M E M O R A N D U M**

PRATTER, J.                                                                                                          MAY 14, 2024

      Amazon.com is a website that has oftentimes been called "The Everything Store." *See, e.g.*, Brad Stone, *The Everything Store: Jeff Bezos and the Age of Amazon* (Hachette Book Group 2013). Jamie McKnight, when he went to visit his barber Tyrese Skinner in Philadelphia, allegedly suffered injuries when Mr. Skinner applied a mole removal cream to his scalp.

      Mr. McKnight alleges that Mr. Skinner bought the mole removal cream from Amazon.com. Or if not from Amazon, then he bought it from WalMart. Or if not from Amazon, then from Target. Or if not from Amazon, then from eBay. In other words, Mr. McKnight has fashioned his complaint as its own type of everything store, where each retailer must have been the one who sold the mole removal cream. In doing so, Mr. McKnight has only marginally pled a sufficient case against Amazon, and as for the others, Mr. McKnight's cart includes only speculation and implausibility. Thus, the Court grants Target's, WalMart's, and eBay's motions to dismiss. The Court also denies Amazon's Motion to Dismiss in part, though grants it to the extent that Mr. McKnight's Second Amended Complaint includes a claim for recklessness and relies on any allegation pertaining to a duty of post-sale recall.

1

**BACKGROUND**

In August 2021, Jamie McKnight went to barber Tyrese Skinner, where Mr. McKnight allegedly purchased skin tag and mole removal services. Mr. Skinner applied a skin tag and mole removal cream manufactured by Amada Pure to Mr. McKnight's head, which allegedly caused Mr. McKnight to suffer significant scarring, pain, and permanent disfigurement. Mr. McKnight alleges that neither Mr. Skinner nor Amada Pure provided warnings about the mole removal cream.

Mr. McKnight alleges that Mr. Skinner "is known and/or believed to have ordered and purchased" the mole removal cream "from Defendant Amazon's online website." Mr. McKnight also alleges that Mr. Skinner told him "directly" that he purchased the cream from Amazon.com. Mr. McKnight includes various information about the product listed on Amazon's website, including the allegation that the Amazon listing for the mole removal cream "deliberately hid/concealed or made less visible reviews which revealed that the product causes burning and scarring[.]"As for the other retailer defendants, WalMart, Target, and eBay, their involvement is limited to the same line repeated throughout Mr. McKnight's Complaint: "[T]o the extent Amazon was not the seller of the subject product, it is averred that Defendant [WalMart, Target, or eBay] is more likely than not the seller and distributor of the Amada Pure Skin Tag and Mole Removal Cream. . . ." Second Am. Compl. ¶¶ 8, 11, 13.

Mr. McKnight first brought his claims against the defendants in the Court of Common Pleas in Philadelphia, though Amazon removed the case to federal court. This Court then denied Mr. McKnight's motion to remand the case back to state court and provided Mr. McKnight a final opportunity to amend his complaint. Mr. McKnight filed his Second Amended Complaint, and Target, WalMart, eBay, and Amazon each separately moved to dismiss the operative complaint for failure to state a claim. The Second Amended Complaint includes strict liability claims and "negligence and recklessness" claims against the retailer defendants.

**LEGAL STANDARD**

Federal Rule of Civil Procedure 12(b)(6) permits dismissing a complaint, in whole or in part, if the party filing a motion to dismiss can demonstrate that the complaint fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The court is "required to accept as true all allegations in the complaint and all reasonable inferences that can be drawn from [the allegations] after construing them in the light most favorable to the non-movant." *Conrad v. Pa. State Police*, 902 F.3d 178, 182 (3d Cir. 2018) (quoting *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994)).

"However, 'the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Doe v. McDonald's USA, LLC*, 504 F. Supp. 3d 360, 364 (E.D. Pa. 2020) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In other words, "[t]o prevent dismissal, all civil complaints must now set out 'sufficient factual matter' to show that the claim is facially plausible." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678).

**DISCUSSION**

**I.   Whether the Second Amended Complaint Includes Sufficient Factual Allegations**

To prevail on a strict products liability, the plaintiff must prove that "(1) the product was defective, (2) the defect proximately caused the plaintiff's injury, and (3) the defect existed at the time the product left the defendant's control." *Wright v. Ryobi Techs., Inc.*, 175 F. Supp. 3d 439, 449 (E.D. Pa. 2016) (citing *Pavlik v. Lane Ltd./Tobacco Exp. Int'l*, 135 F.3d 876, 881 (3d Cir. 1998)). "[A] person or entity engaged in the business of selling a product has a duty to make and/or

3

market the product—which 'is expected to and does reach the user or consumer without substantial change in the condition in which it is sold'—free from 'a defective condition unreasonably dangerous to the consumer [or the consumer's] property.'" *Tincher v. Omega Flex, Inc.*, 104 A.3d 328, 383 (Pa. 2014) (citing Restatement (Second) of Torts § 402A(1) (Am. L. Inst. 1965)). In other words, "[t]he duty in strict liability pertains to the duty of a manufacturer and of suppliers in the chain of distribution to the ultimate consumer." *Id.* at 383.

The Supreme Court of Pennsylvania has not yet determined whether an e-commerce business can be strictly liable for products sold on its website by a third-party vendor, but recently granted the Court of Appeals for the Third Circuit's petition seeking an answer on this question: "Under Pennsylvania law, is an e-commerce business, like Amazon, strictly liable for a defective product that was purchased on its platform from a third-party vendor, which product was neither possessed nor owned by the e-commerce business?"*Oberdorf v. Amazon.com, Inc.*, 237 A.3d 394 (Table) (July 21, 2020).

Here, because none of the retailer defendants argues that it cannot be held strictly liable under this theory, the Court need not decide this issue before the Pennsylvania Supreme Court provides guidance on the question posed. The Court next analyzes the specific claims raised in Amazon's Motion to Dismiss.

### A. Amazon

Amazon argues that Mr. McKnight's Complaint should be dismissed in full because, by alleging that WalMart, Target, eBay, *and* Amazon sold the defective mole removal cream, Mr. McKnight's Complaint is not plausible where all four retailers could not have sold the mole removal cream in question. Mem. L. in Supp. Mot. to Dismiss 6, Doc. No. 77. Amazon also argues that Mr. McKnight relies only on the allegation that his barber, Mr. Skinner, told him that he purchased the cream on Amazon and that Mr. McKnight "provides no substantive facts to support

said purchase, such as a sales receipt, order confirmation number, the date of the alleged sale, [etc.]." *Id.* at 6-7.

This inquiry, however, forces the Court to consider the *evidence* supporting Mr. McKnight's allegations, not whether Mr. McKnight's claims are plausible. It very well could be that there is no evidence supporting Mr. McKnight's allegations, but that is a question to be raised on a motion for summary judgment, not at the motion to dismiss stage. *See Penn Eng'g & Mfg. Corp. v. Peninsula Components, Inc.*, No. 19-513, 2023 WL 9051998, at *2 (E.D. Pa. Dec. 28, 2023) ("The key to surviving summary judgment is evidence.").

Furthermore, Mr. McKnight includes allegations supporting his claims against Amazon beyond the statements from Mr. Skinner. In the first instance, Mr. McKnight alleges that Amazon sold the mole removal cream in question and includes ratings and identifiers for the product. Second Am. Compl. ¶¶ 5, 18-19, Doc. No. 74. Mr. McKnight also avers that an Amazon vehicle delivered the mole removal cream to Mr. Skinner. *Id.* ¶ 20. Taken together, these factual allegations support a plausible claim that Mr. McKnight's barber purchased the allegedly defective mole removal cream on Amazon, where it was allegedly under Amazon's control, and applied it to his scalp, leaving significant injuries.

At first glance, the fact that Mr. McKnight includes Target, WalMart, and eBay as defendants in this matter complicates the analysis. Afterall, Mr. Skinner could not have bought the mole removal cream from all four entities, and "Pennsylvania courts are reluctant to apply market share liability . . . ." *Warnick v. NMC-Wollard, Inc.*, 512 F. Supp. 2d 318, 334 n.26 (W.D. Pa. 2007) (Hardiman, J.). Including these additional defendants may decrease the probability that Mr. Skinner purchased the mole removal cream from Amazon because it increases the uncertainty that Mr. Skinner actually made such a purchase from The Everything Store. However, the plausibility

5

standard as articulated in *Iqbal* "is not akin to a 'probability requirement'" but instead "asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. Mr. McKnight, by including the additional factual allegations regarding Mr. Skinner's statements; the product's listing on Amazon; and the product being delivered on an Amazon truck, has met the relatively low bar of showing that it is *plausible* that the mole removal cream came from Amazon, even where the inclusion of the other retailer defendants suggests that there is some doubt that Mr. Skinner purchased it on Amazon.[1]

### B. Target, WalMart, and eBay

#### 1. The claims against Target, WalMart, and eBay are dismissed.

Each of the remaining retailer defendants filed its own motion to dismiss, and each essentially makes the same argument: that Mr. McKnight's Second Amended Complaint does not include sufficient factual allegations against the retailer that demonstrates any connection between the retailer and the mole removal cream. *See, e.g.*, Defendant eBay's Mem. L. in Supp. of Mot. to Dismiss 5, Doc. No. 78 ("These averments purport to allege that Amazon's alleged conduct caused Plaintiff's alleged injuries. In fact, there are no facts alleged demonstrating that eBay had anything to do with Plaintiff's alleged injuries.").

The Court agrees with the non-Amazon retailer defendants because Mr. McKnight's Second Amended Complaint includes only boilerplate, conclusory language. Using eBay as an example,[2] Mr. McKnight's strict liability claim avers that eBay only "designed, manufactured,

---

[1] Because Amazon's motion to dismiss the complaint in full focuses on the lack of connection between Amazon and the mole removal cream, the Court finds that the alleged connection between Amazon and the sale of the cream also supports Mr. McKnight's negligence claim.
[2] This is not to say that there is anything unique about eBay or its actions as a defendant in this matter. In fact, Mr. McKnight uses almost identical language pertaining to the claims against each non-Amazon defendant, only substituting the party name where applicable. *E.g.*, *compare* Second Am. Compl. ¶ 127 ("Defendants' [sic] [WalMart's] product posed an unreasonable danger to intended users such as

developed, distributed, assembled, produced . . . sold or otherwise supplied and placed in the stream of commerce the [mole removal cream], in a manner which was defective, improperly manufactured, . . . [and] unreasonably dangerous to the ultimate users, consumers, and bystanders, including Plaintiff." Second Am. Compl. ¶ 175. He also avers that the product "was defective and unsafe because it could cause severe pain and suffering, burning, scarring and disfigurement, and other serious injuries as it did in the case of Plaintiff." *Id.* ¶ 180. In other words, all Mr. McKnight alleges is that the retailer had a duty to the ultimate consumer, that the retailer breached that duty by placing the defective cream into the stream of commerce, and that the retailer caused damages by selling the product. This amounts to nothing more than the product being defective, it causing Mr. McKnight's injuries, and the defect existing when it left the retailer's control, which are simply the elements of a strict products liability claim. *See Wright*, 175 F. Supp. 3d at 449 (citing *Pavlik*, 135 F.3d at 881).

Mr. McKnight includes only one "factual" allegation in his claims against the non-Amazon defendants beyond the language that merely restates the elements of the claims: "Upon information and belief, to the extent Amazon was not the seller of the subject product, it is averred that Defendant eBay is more likely than not the seller and distributor of the Amada Pure Skin Tag and Mole Removal Cream, subject to this litigation (also referred to generally at 'the product')." Second Am. Compl. ¶ 13. Mr. McKnight uses the same exact language regarding Target and Walmart, only substituting the name of the relevant retailer defendant. *Id.* ¶¶ 8, 11. All three, however, cannot "*more* likely than not" be the seller of the mole removal cream if Amazon is not the seller because that leads to the mathematical impossibility that three defendants each had over a 50% probability of being the culprit retailer. Mr. McKnight must instead "identify the defendant

---

Plaintiff, due to its defects."), *with* Second Am. Compl. ¶ 179 ("Defendants' [sic] [eBay's] product posed an unreasonable danger to intended users such as Plaintiff, due to its defects.").

who manufactured the allegedly deficient product, and failure to identify the offending product and its manufacturer *or seller* is 'a fatal deficiency' to such a claim." *First Liberty Ins. Corp. v. Haier US Appliance Sols., Inc.*, No. 23-2268, 2023 WL 5832163, at *2 (E.D. Pa. Sept. 8, 2023) (emphasis added) (first citing *Cummins v. Firestone Tire & Rubber Co.*, 495 A.2d 963, 968-69 (Pa. Super. Ct. 1985) and then citing *Long v. Krueger, Inc.*, 686 F. Supp. 514, 517 (E.D. Pa. 1988) (Van Antwerpen, J.)).

Beyond Mr. McKnight not including sufficient factual allegations to support his claim against the non-Amazon retailer defendants, his claim against the three is not plausible based on his allegations against Amazon itself. For example, Mr. McKnight avers that Mr. Skinner "told Plaintiff directly that he purchased the Cream directly off Amazon.com" and that "[o]n information and belief, the Cream was delivered to Defendant Skinner from an Amazon vehicle. . . ." Second Am. Compl. ¶¶ 17, 20. He also avers that Mr. Skinner "is known and/or believed to have ordered and purchased [the mole removal cream] from Defendant Amazon's online website." *Id.* ¶ 16. It is simply not plausible that the cream in question could have been bought on Target, WalMart, or eBay when the Second Amended Complaint alleges that (1) Mr. Skinner purchased the cream from Amazon's website, (2) told Mr. McKnight that he purchased it on Amazon, and (3) an Amazon vehicle delivered the mole removal cream. Without such plausibility and based on the allegations in the Second Amended Complaint, the Court cannot "draw the reasonable inference that [Target, WalMart, or eBay] is liable for the misconduct alleged." *Fowler*, 578 F.3d at 210 (citing *Iqbal*, 556 U.S. at 663).

Mr. McKnight argues that, by including the non-Amazon retailer defendants, he is simply "exercis[ing] his right" "to plead alternatively and inconsistently pursuant to FRCP 8 (d) 2-3 [sic]." *E.g.*, Resp. in Opp. Mot. to Dismiss 3, Doc. No. 85. Though Rule 8(d) permits alternative

8

pleadings, "what is pled alternatively must still have a plausible basis grounded in fact." *Kovach v. Turner Dairy Farms, Inc.*, 929 F. Supp. 2d 477, 500 (W.D. Pa. 2013) (citing *Iqbal*, 556 U.S. at 663). As demonstrated above, Mr. McKnight simply does not include any *facts* to support his "alternative pleading" that Mr. Skinner purchased the mole removal cream in question from any of Target, WalMart, or eBay, and instead includes only conclusory allegations to support his claims.

Mr. McKnight also argues that each of the non-Amazon retailer defendants "**has not provided any verifiable proof** that they were not the seller or within the chain of distribution at time of incident." *E.g.*, Resp. in Opp. Mot. to Dismiss 4, Doc. No. 85 (emphasis in original). The Court raises an eyebrow to Mr. McKnight's argument here because there is no requirement at the motion to dismiss stage that *a defendant* must provide "verifiable proof" regarding its role stemming from *the plaintiff's* allegations. In fact, though the Court likely need not remind Mr. McKnight of the basics of a motion to dismiss, the Court must accept the factual allegations *in the complaint* as true at the motion to dismiss stage. *Iqbal*, 556 U.S. at 678 (emphasis added). Even if the non-Amazon retailer defendants had shown verifiable proof that they unequivocally were not involved in the sale but Mr. McKnight's Complaint included sufficient factual matter to support plausible allegations against them, the Court could not consider such "proof," and the complaint would proceed. *See id.* In this instance, however, Mr. McKnight has not included sufficient factual matter against Target, WalMart, or eBay to support any claim against them.[3]

---

[3] Mr. McKnight also includes a claim of "negligence and recklessness" against Target, WalMart, and eBay. However, he again does not include any further factual allegations supporting these claims. Thus, the Court dismisses such claims against these defendants as well for the same reasons it dismisses the strict products liability claims.

### 2. The Second Amended Complaint is dismissed with prejudice as to Target, WalMart, and eBay.

Courts ordinarily provide a plaintiff with leave to file an amended complaint when granting a defendant's motion to dismiss in full. *Kurtz v. Westfield Ins.*, 610 F. Supp. 3d 703, 710 (E.D. Pa. 2022). At the same time, the Court "may dismiss a complaint with prejudice when 'leave to amend would be futile.'" *Id.* (quoting *Lontex Corp. v. Nike, Inc.*, 384 F. Supp. 3d 546, 559 (E.D. Pa. 2019)). "Leave to amend is futile when 'the complaint, as amended, would fail to state a claim upon which relief could be granted.'" *Id.* (quoting *Lontex*, 384 F. Supp. 3d at 560).

Here, leave to amend would be futile. Mr. McKnight has already twice amended the complaint, and both times included the same conclusory allegations against Target, WalMart, and eBay. *See generally* Am. Compl., Doc. No. 29 and Second Am. Compl., Doc. No. 74. Moreover, Mr. McKnight sought leave to file a second amended complaint so that he could (1) include Amada Pure as a defendant when he "accidentally omitted" the company as a party to the First Amended Complaint, (2) correct the date of the incident, and (3) "add more precise allegations against Amazon and others Strict Liability [sic]." Resp. in Opp. Mot. to Dismiss First Amended Compl. 10-11, Doc. No. 63.[4] The Second Amended Complaint allegedly included these "more precise" allegations, though they do not support Mr. McKnight's claims against them, and with those already being included, the Court does not see how a further attempt to amend the complaint would include any other factual allegations.

---

[4] Mr. McKnight sought the Court's leave to file his second amended complaint buried in his opposition to eBay's previous motion to dismiss. He also omitted the use of page numbers in this briefing, and thus the Court uses the PDF pages on which Mr. McKnight's request appears.
  In seeking to amend his complaint for these stated reasons, the Court acknowledges that Mr. McKnight did so to correct two avoidable, clerical errors. Mr. McKnight also previously included a typographical error in his address, which Mr. McKnight acknowledged during oral argument on the previous motion to remand that led to question on diversity of citizenship. Based on these copious errors in the past, the Court cannot help but wonder whether another attempt at amending the complaint would lead to even more errors or Mr. McKnight "accidentally omitt[ing]" other crucial information.

The Court also cannot fathom a circumstance in which Mr. McKnight can properly plead a case against these other defendants when he does not include a single fact against them after having two opportunities to properly plead his case and where the mole removal cream can have only come from one retailer. Additionally, there is no situation in which it is plausible that Target, WalMart, or eBay had control over the product in question when Mr. Skinner told Mr. McKnight he purchased the cream from Amazon, that the cream was delivered from an Amazon vehicle, and that the cream was purchased "from Defendant Amazon's online website." Second Am. Compl. ¶ 16. Thus, because amendment would be futile, the Second Amended Complaint is dismissed with prejudice against Target, WalMart, and eBay.

## II.     Amazon's Remaining Arguments

### A.    Post-Sale Conduct

Mr. McKnight's Second Amended Complaint alleges that "[u]pon information and belief, Defendants continued to sell and market the defective product after Plaintiff's incident despite being aware of its dangerous propensities for causing injuries while being used as intended[,]" Second Am. Compl. ¶ 62, and Amazon seeks to strike this allegation to the extent that it asserts a post-sale duty to recall under Rule 12(f). Mr. McKnight's only response to this argument is that "Amazon tries to make an illegitimate argument concerning post[-]sale recall[,] which isn't the gist of Plaintiff's punitive damages claim."

"The [C]ourt may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Additionally, "Pennsylvania law does not recognize a duty to recall or retrofit products." *Liebig v. MTD Prods. Inc.*, No. 22-4427, 2023 WL 5517557, at *3 n.6 (E.D. Pa. Aug. 25, 2023) (collecting cases). By Amazon arguing that it has no duty to recall and understanding that Pennsylvania law recognizes no such duty, it can hardly be said that Amazon's argument is "illegitimate" like Mr. McKnight

11

characterizes it, nor does Amazon's argument here have any connection to punitive damages. Instead, Amazon seeks to strike such matter from the pleading under Rule 12(f), and because there is no duty to recall under Pennsylvania law and the allegation specifically concerns Amazon "continuing to sell and market" the product, the Court agrees with Amazon. Thus, the Court strikes Paragraph 62 of the Second Amended Complaint under Rule 12(f) and does so with prejudice because amendment would be futile where no such duty exists.

### B. Recklessness Claim and Punitive Damages

Amazon next seeks to dismiss Mr. McKnight's "recklessness" claim where the Second Amended Complaint includes a claim of "Negligence and Recklessness" against Amazon. The Court agrees because "[t]here is no cause of action for recklessness under Pennsylvania law." *M.U. v. Downingtown High Sch. E.*, 103 F. Supp. 3d 612, 629 (E.D. Pa. 2015) (citing *Archibald v. Kemble*, 971 A.2d 513, 519 (Pa. Super. Ct. 2009)). Such law controls even where the defendant acted recklessly because "the cause of action remains [as one] sounding in negligence." *Id.* (quoting *Archibald*, 971 A.2d at 519). Thus, the Court dismisses Count II of the Second Amended Complaint to the extent that it includes a claim for recklessness. The Court does so with prejudice because amendment would be futile where a recklessness claim simply does not exist under Pennsylvania law.

Finally, Amazon seeks to strike Mr. McKnight's claim for punitive damages. Punitive damages "are penal in nature and are intended to punish a tortfeasor and to deter the tortfeasor and others from similar conduct." *Dwyer v. Ameriprise Fin., Inc.*, No. 2 WAP 2023, 2024 WL 1776091, at *7 (Pa. Apr. 25, 2024) (citing *Hutchison ex rel. Hutchison v. Luddy*, 870 A.2d 766, 770 (Pa. 2005)). "Such damages are appropriate 'where the defendant's actions are so outrageous as to demonstrate willful, wanton or reckless conduct.'" *Id.* (quoting *Hutchison*, 870 A.2d at 770). At the same time, whether punitive damages are warranted requires "an inherently factual inquiry

not appropriately resolved on a motion to dismiss." *Greenwald Caterers Inc. v. Lancaster Host, LLC*, 599 F. Supp. 3d 235, 248 (E.D. Pa. 2022) (quoting *Servis One, Inc. v. OKS Grp., LLC*, No. 20-4661, 2021 WL 6069168, at *1 n.1 (E.D. Pa. May 14, 2021)).

Here, the Second Amended Complaint states that "[p]unitive damages are appropriate against [Amazon] for knowingly and recklessly selling a harmful product in favor of increasing corporate profits." Second Am. Compl. ¶ 73. The only apparent support for this call for punitive damages is Mr. McKnight's allegation that Amazon's webpage "deliberately hid/concealed or made less visible reviews which revealed that the [mole removal cream] causes burning and scarring. . . ." *Id.* ¶ 19. Mr. McKnight then alleges that the reviews lack keyword search options relating to burning and scarring, and that because Amazon's reviews "default" to top ratings, "the online market returns reviews with the top/highest ratings" even when keywords like burning are selected. *Id.*

The Court does not presently find that Amazon's actions unequivocally were without "willful, wanton or reckless conduct." As pled, the Second Amended Complaint suggests that Amazon willfully hid negative reviews of the mole cream removal that mentioned its potential to cause severe burns and injuries. Determining whether Amazon acted willfully and recklessly to hide such reviews requires development of the factual record and thus cannot be decided at the motion to dismiss stage.

At the same time, the Court has significant reservations that a claim for punitive damages will survive the duration of this litigation. For example, only extreme and brazen circumstances would support a claim for punitive damages based on the default methodology Amazon uses to sort product reviews. It very well may be that Amazon was willfully hiding negative reviews of the mole removal cream to boost its sales, but, for an online marketplace that sells hundreds of

13

millions of products, the so-called "everything store," it appears unlikely that Amazon employees would hide negative reviews of this one specific item. Thus, though the Court raises a judicial eyebrow to the claim for punitive damages, the claim may proceed at this time based solely on the allegations in the Second Amended Complaint.

## CONCLUSION

For the foregoing reasons, the Court grants Target, WalMart, and eBay's Motions to Dismiss with prejudice, and grants in part and denies in part Amazon's Motion to Dismiss.

BY THE COURT:

**s/ Gene E.K. Pratter**
**GENE E.K. PRATTER**
**UNITED STATES DISTRICT JUDGE**